UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AIDA VELEZ, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:12CV00143 AGF |
| PORTFOLIO RECOVERY ASSOCIATES, INC., | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Aida Velez asserts claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692k *et seq.*, and the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.*, against Defendant Portfolio Recovery Associates, Inc. ("PRA, Inc.") arising out telephone and mailed communications related to the collection of consumer debt. Plaintiff, a Missouri resident, originally filed this action in the Circuit Court for St. Charles County, Missouri, and Defendant removed it to this Court pursuant to 28 U.S.C. § 1441(a). Now before the Court is Defendant's motion to dismiss for lack of personal jurisdiction. Pursuant to Plaintiff's request, the Court held a hearing on the motion, at which the parties offered argument, exhibits, and testimony. For the reasons set forth below, Defendant's motion to dismiss will be granted and Defendant's request for attorney's fees will be denied.

The record before the Court indicates the following:

Plaintiff received numerous dunning phone calls regarding a consumer debt. The calls were placed to her cell phone in St. Charles, Missouri, from an automatic telephone dialing

system. The callers identified themselves as "Portfolio Recovery Associates." *See* Plaintiff's Affidavit (Doc. No. 8-1.). Plaintiff alleges that the calls came from multiple numbers blocked by caller identification and that she recorded one of the calls. Plaintiff also received a collection letter regarding the purported debt from an entity identifying itself as "Portfolio Recovery Associates, LLC." *Id.* Plaintiff alleges that the methods employed by PRA, Inc. to recover the debt violated the FDCPA and the TCPA in numerous respects.

Defendant, PRA, Inc., operates a website site at *www.portfoliorecovery.com*. Information at the website indicates that Defendant "operates through its subsidiaries," is engaged in the business of debt collection, and that "[u]nless otherwise specified herein, references to Portfolio Recovery Associates or the Company may refer to Portfolio Recovery Associates, Inc. or any of its wholly owned subsidiaries." Doc. Nos. 8-1, ¶ 6; 8-2, pg. 1. The term "Portfolio Recovery Associates" as defined on the website includes a reference to Defendant, but makes no mention of the LLC. (Doc. No. 8-2, pg. 1.)

Defendant PRA, Inc. is a publicly-traded corporation, incorporated in Delaware, with its principal place of business in Virginia. It is a holding company that does not maintain offices, employees or a registered agent in Missouri. Nor does it engage in the collection of consumer debt or conduct any other business in Missouri. *See* Affidavit of Judith Scott. (Doc. No. 7-1.) Recent SEC filings made on behalf of Defendant provide that it is engaged in the business of debt collection and is the sole member of Portfolio Recovery Associates, LLC ("the LLC"). (Doc. Nos. 10-2, p. 6 and 10-6, p. 1.) The LLC is a separate related entity that Defendant contends is the proper party defendant in this action. On two occasions, before and during the hearing, Defendants offered Plaintiff the opportunity to substitute the

LLC as the party defendant and agreed to waive service on that entity. Plaintiff refused these offers. (Doc. No. 9-2.)

Mr. Christopher Lagow, deputy general counsel of the LLC, testified at the hearing with respect to the relationship between Defendant and the LLC. He testified that Defendant is a holding company indirectly engaged in debt collection, that LLC is a wholly-owned subsidiary, and that Defendant and the LLC share interlocking directorates and consolidated financial statements. Defendant and the LLC maintain separate payrolls for their own employees. Defendant has 25-30 employees, none of whom make debt collection calls, and does not employ debt collection attorneys. Although the LLC operates the call centers, LLC employees do not identify themselves with the "LLC" designation when they make phone calls.

Lagow further testified that the LLC, as a subsidiary of the holding company, performs certain functions including collection mailings and the operation of call centers. The LLC is engaged in the business of debt collection, purchasing receivables and collecting on them. The LLC is responsible for the litigation of all suits arising from its collection activities and is capitalized by the debt it collects. Mr. Lagow's rough estimate of the value of the LLC's collections in 2011 was between tens and hundreds of millions of dollars.

Defendant moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction, asserting a lack of minimum contacts with Missouri and no basis

for the exercise of either specific or general personal jurisdiction. Defendant further contends that it is not a debt collector within the meaning of the FDCPA.[1]

Plaintiff contends that Defendant is in fact a debt collector because its website and SEC filings identify it as such. Plaintiff further asserts that Defendant's reliance upon the separation of functions between itself and the LLC is specious, and that Defendant and the LLC are so interrelated as to be alter egos or agents of one another for purposes of the Court's exercise of personal jurisdiction in this matter.

**Legal Standard: Rule 12(b)(2) Motion to Dismiss**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction by pleading facts sufficient to support a "reasonable inference that the defendant[] can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (internal quotation and citations omitted). The court must view the evidence in the light most favorable to the party asserting personal jurisdiction. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004). Although the evidentiary showing required at the prima facie stage is minimal, that showing must be supported by affidavits and exhibits and not by the pleadings alone. *K-*

---

[1] 15 U.S.C. § 1692a(6) defines "debt collector" as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . .

*V Pharm. Co.*, 648 F.3d at 592. The party espousing jurisdiction carries the ultimate burden of proof and once the court holds an evidentiary hearing, personal jurisdiction must be proved by a preponderance of the evidence. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 646-47 (8th Cir. 2003) (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).

Personal jurisdiction may be specific or general. Specific jurisdiction arises "when a defendant, through its contacts with the forum, purposefully avails itself of the privilege of conducting business in the forum," and the plaintiff's claim "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Pangaea v. Flying Burrito, LLC*, 647 F.3d 741, 745-46 (8th Cir. 2011) (internal quotation omitted); *see also Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). General jurisdiction exists when a defendant has "'continuous and systematic'" contacts with the forum state so as "to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

Where, as here, the court's subject matter jurisdiction is premised upon a federal statute[2] or other federal question, rather than diversity of citizenship, a prima facie case for

---

[2] The Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1692k(d) which provides:

"[a]n action to enforce any liability created by [the FDCPA] may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."

5

personal jurisdiction requires two elements. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). First, the plaintiff must demonstrate that haling the defendant into court accords with the Due Process Clause. *Id.* Second, the plaintiff must show that the defendant is amenable to service of process from the court in question. *Id.* ("There also must be a basis for the defendant's amenability to service of summons."); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant.") (citation omitted). Pursuant to Fed. R. Civ. P. 4(k)(1),[3] serving a summons "establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."[4] Fed. R. Civ. P. 4(k)(1)(C). The FDCPA, however, provides neither an independent basis for personal jurisdiction nor nationwide service of process. *Thoennes v. Masari Investments, LLC*, No. 092822SC, 2009 WL 4282807, at *2

---

[3] Rule 4(k)(1) provides:

> *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
> (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
> (B) who is a party joined under Rule 14 or Rule 19 and is served within a judicial district of the United States and not more than 100 miles from the place where the summons was issued; or
> (C) when authorized by a federal statute.

[4] Fed.R.Civ.P. 4(k)(1)(A) provides that serving a summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of the courts of the state in which the district court sits. Fed. R. Civ. P. 4(e)(1) provides that when the relevant federal statute is silent, service may be effectuated in accordance with the law of the state in which the district court sits. The standards of Rule 4(e)(1) are applicable to corporations pursuant to Rule 4(h)(1)(A).

(N.D. Cal. Nov. 25, 2009) (holding that 15 U.S.C. § 1692k(d), the basis for subject matter jurisdiction under the FDCPA, does not obviate the requirement for personal jurisdiction) (citing *Sluys v. Hand*, 831 F. Supp. 321, 325 (S.D.N.Y. 1993) ("A non-restrictive approach toward forum determination under the Act is set forth in 15 USC § 1692k(d), which does not expand personal jurisdiction parameters but indicates that they should not be construed in an unduly restrictive way in cases under the Act.")).

In addition, 15 U.S.C. § 1692k(d) is clearly a jurisdictional provision, and does not address or provide for nationwide service of process. *Cf. Wallace v. Mathias*, No. 4:12–CV–3011, 2012 WL 1807334, at *5 (D. Neb. May 17, 2012); *see also Omni Capital*, 484 U.S. at 411 ("Congress knows how to authorize nationwide service of process when it wants to provide for it. That Congress failed to do so here argues forcefully that such authorization was not its intention."); *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89 (2d Cir. 2006) (same).

When the relevant federal statute is silent as to service of process, as is the case here, a court may exercise personal jurisdiction only to the extent permitted by the forum state's long-arm statute. *See*, *e.g., Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010); *Blume v. International Services, Inc.*, No. 4:12 CV 165 DDN, 2012 WL 1957419, at *8 (E.D. Mo. May 31, 2012); *Wallace*, 2012 WL 1807334, at *4-6. Thus, determining amenability to service requires "the same personal jurisdiction inquiry and concomitant 'minimum contacts' analysis" applicable when the court exercises diversity of citizenship subject matter jurisdiction and brings the familiar

7

Fourteenth Amendment analysis back into play.[5] *Blume,* 2012 WL 1957419, at *8 (citing *Wang v. Schroeter*, No. 11-10009-RWZ, 2011 WL 6148579, at *4 (D. Mass. Dec. 9, 2011)).

The Court therefore begins its analysis by addressing amenability to service with respect to the Missouri long-arm statute.

**Amenability to Service**

Missouri's long-arm statute, Mo. Rev. Stat. § 506.500.1, authorizes the exercise of personal jurisdiction over an entity that transacts business in Missouri when the cause of action arises from such transaction. Mo. Rev. Stat. § 506.500.1(1). In addition, Missouri's long-arm statute authorizes personal jurisdiction over a defendant who commits a tort within the state. Mo. Rev. Stat. § 506.500.1(3). If the tortious act is committed outside of Missouri, the long-arm statute will apply so long as the act "produces actionable consequences" in Missouri. *Noble v. Shawnee Gun Shop, Inc.*, 316 S.W.3d 364, 371 (Mo. Ct. App. 2010) (citing *Capitol Indem. Corp. v. Citizens Nat'l Bank of Fort Scott*, 8 S.W.3d 893, 903 (Mo. Ct. App. 2000)).

"The statute is construed broadly, such that a single transaction can justify jurisdiction if it is the transaction sued upon." *Singh v. M/S Crompton Greaves Ltd.*, No. 4:11 CV 1207

---

[5] There is some limited authority for the argument that even where service is made under the forum state's long-arm statute, the relevant inquiry is whether the exercise of personal jurisdiction is consistent with the Fifth Amendment when the court exercises federal question jurisdiction. *See Wallace*, 2012 WL 1807334, at *6 (citing *Chew v. Dietrich*, 143 F.3d 24, 27 n.3 (2d Cir. 1998)); *see also Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir. 1979) (holding that defendant "has sufficient contacts with the United States to support fair exercise of jurisdiction over him by a United States court" if he resides or conducts business on American soil); *Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F. Supp. 1316, 1319 (N.D. Ill. 1996) (finding that a corporation engaging in business in the United States established minimum contacts). The Court rejects that view for the reasons set forth in *Wallace*, 2012 WL 1807334, at *4-6.

SNLJ, 2011 WL 5833969, at *6 (E.D. Mo. Nov. 18, 2011) (citing *Capitol Indem. Corp.*, 8 S.W.3d at 904). "[I]f a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted 'to provide for jurisdiction, within the specific categories enumerated in the statute, to the full extent permitted by the Due Process Clause.'" *Viasystems*, 646 F.3d at 593 (quoting *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)).

Here, Plaintiff asserts that Defendant, by mailing a letter and directing numerous telephone calls to Missouri, "transacted business" in Missouri for purposes of the long-arm statute. In addition, because a violation of the FDCPA constitutes a breach of a legal duty, and debt collectors may be liable for damages and attorney fees, the acts alleged in the complaint may be "tortious" within the meaning of Mo. Rev. Stat. § 506.500.1(3). *See* 15 U.S.C. §§ 1692b–1692h (imposing a series of behavioral obligations on debt collectors); 15 U.S.C. § 1692k (damages and attorney fees); *see also Vlasak v. Rapid Collection Sys., Inc.* 962 F. Supp. 1096, 1100 (N.D. Ill.1997) (finding single alleged violation of the FDCPA analogous to the commission of a tortious act under the Illinois long-arm statute); *Bailey v. Clegg, Brush & Assocs., Inc.*, No. 90 CV 2702, 1991 WL 143461, at *2 (N.D. Ga. 1991) (same, for purposes of the Georgia long-arm statute).

Assuming, without deciding, that the actions alleged, if performed by the Defendant, would allow for service of process under the Missouri long-arm statute, Plaintiff has not met her burden of demonstrating that Defendant, rather than the LLC, initiated the contacts with Missouri. Even construing the evidence in the light most favorable to Plaintiff, the Court finds that she has shown, at most, that the phone calls and information on the website and in

the SEC filings create ambiguity with respect to which entity was responsible for the calls and the letter. The letter sent to Plaintiff was unambiguous, however, and plainly identified the debt collector as the LLC. The Court further finds that Defendant, by way of affidavits and the testimony of Mr. Lagow, successfully refuted Plaintiff's suggestion that Defendant, rather than the LLC, made the calls and sent the letter.

As such, Plaintiff has not made a showing that Defendant is subject to service of process for purposes of the Missouri long arm statute. Nor has Plaintiff demonstrated that Defendant's involvement with or control over the LLC is sufficient to allow it to be haled into this Court under the Missouri long-arm statute on the basis of the LLC's actions.[6] *See Cepia, L.L.C. v. Alibaba Grp. Holdings Ltd.,* No. 4:11-CV-273 SNL, 2011 WL 5374747, at *5-6 (E.D. Mo. Nov. 8, 2011).

**Due Process**

Nor does Defendant have sufficient contacts with the forum state to satisfy the second prong of the analysis, the due process concerns of the Fourteenth Amendment. *See Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). The Eighth Circuit recently suggested that the Missouri long arm statute and the due process clause are not identical in scope and that they

---

[6] Plaintiff points out that Defendant has appeared in other states to defend and/or settle FDCPA claims. However, Plaintiff did not provide the Court with copies of any of the non-published cases, and insofar as the Court can determine, none of these cases addressed the issue of personal jurisdiction. *See, e.g. Marshall v. Portfolio Recovery Associates, Inc.*, 646 F. Supp. 2d 770 (E.D. Pa. 2009); *Bumpus v. Portfolio Recovery Associates, Inc.*, Case No. 1:10-CV-00557 (E.D. Cal. 2011); *Bell v. Portfolio Recovery Associates, Inc.*, Case No. 11-2101 (D. Minn. 2011); *Flores v. Portfolio Recovery Associates, Inc.*, Case No. CV11-00951 (C.D. Cal. 2011); *Cerutti v. Portfolio Recovery Associates, Inc.*, Case No. CV F 11-0818 (E.D. Cal. 2012).

each should be analyzed separately. *Viasystems*, 646 F.3d at 593 n.2 (citing *Bryant v. Smith Interior Design Grp.*, 310 S.W.3d 227, 231 (Mo. 2010)).

The Due Process Clause of the Fourteenth Amendment requires that there be sufficient minimum contacts between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted)). These minimum contacts must arise because the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Pangaea*, 647 F.3d at 745. This "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

The Eighth Circuit has established a five-factor test to determine whether a defendant has sufficient minimum contacts with the forum state so as to confer personal jurisdiction for purposes of the due process clause: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *K–V Pharm. Co.*, 648 F.3d at 592.

Applying these factors, the Court concludes that even if the actions of the LLC would be sufficient to subject it to service of process in this Court, the relevant due process inquiry is whether the actions of the LLC are sufficient to subject Defendant to such service. Here, the

11

Court finds that actions in this forum are not sufficient to subject Defendant to being haled into this jurisdiction, consistent with the dictates of due process, and Defendant's relationship with the LLC does not alter that analysis.

Plaintiff urges the Court to find either that Defendant and the LLC are alter egos of one another or have an agency relationship such that the Court may exercise personal jurisdiction over Defendant on the basis of the LLC's actions. But Plaintiff's arguments are not persuasive.

It is well-settled that a parent corporation is not subject to the personal jurisdiction of a state as a result of the mere presence or actions of its wholly owned subsidiary. *Epps*, 327 F.3d 642 at 649 (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336 (1925)). The Eighth Circuit has held that "the fiction of a corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation." *Epps*, 327 F.3d at 649. "'The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction. . . .'" *Martin v. ReliaStar Life Ins. Co.*, 710 F. Supp. 2d 875, 884 (D. Minn. 2010) (quoting *Epps*, 327 F.3d at 649). To demonstrate that two entities are alter-egos of one another, such that the "corporate veil" may be pierced, a plaintiff must show that there is such a unity of interest and ownership that the separate entities no longer exist; and that failure to disregard the separate identities would result in fraud or injustice. *In re Genetically Modified Rice Litigation*, 576 F. Supp. 2d at 1072 (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)). A parent corporation may be directly involved in the activities of its subsidiaries without submitting to jurisdiction.

Activities such as monitoring the subsidiary's performance, supervising finance and capital budget decisions, and articulating general policies and procedures are not sufficient to allow attribution of a parent's action to a subsidiary. *United States v. Bestfoods*, 524 U.S. 51, 72 (1998). The alter ego test is satisfied only where "the record indicates that the parent dictates every facet of the subsidiary's business–from broad policy decisions to routine matters of day-to-day operation." *In re Genetically Modified Rice Litigation*, 576 F. Supp. 2d at 1072 (internal quotations and citations omitted); *see also Viasystems*, 646 F.3d at 596.

Applying these principles, the Court finds that Defendant's ownership interest in the LLC and its inclusion of the LLC's assets and liabilities on its balance sheets and SEC filings is insufficient to satisfy the alter ego test. *See Epps,* 327 F.3d at 650. Although the LLC performs certain functions, such as the operation of the call centers, as a subsidiary of Defendant, there is no indication on the record that Defendant dictates every facet of the LLC's business. Defendant's ownership interest in the LLC is too distant and limited a contact with Missouri to justify subjecting it to personal jurisdiction. *Id.* A degree of control and domination greater than that evidenced here is required to support a finding that two entities are alter egos of one another. *See, e.g.*, *Viasystems,* 646 F.3d at 596; *Epps*, 327 F.3d at 648-49; *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975). In addition, Plaintiff's reliance on *United States v. ACB Sales & Serv., Inc.*, 590 F. Supp. 561 (D. Ariz. 1984), is misplaced because the court in that case did not address the question of personal jurisdiction, and the facts are not analogous to the case presented here.

In the alternative, Plaintiff asserts that an agency relationship should be implied between the LLC and Defendant because the LLC performs certain services on behalf of Defendant. The Eighth Circuit recently rejected this "agency theory" of jurisdiction as inconsistent with its precedent. *Viasystems,* 646 F.3d at 596 ("Our cases consistently have insisted that 'personal jurisdiction can be based on the activities of [a] nonresident corporation's in-state subsidiary . . . only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego.'") (quoting *Epps*, 327 F.3d at 648–49.) *Viasystems* explicitly rejected an agency theory based upon allegations like those here that an entity "perform[ed] services sufficiently important to [defendant] that if it did not have a representative to perform them, [defendant's] own officials would undertake to perform substantially similar services." *Viasystems*, 646 F.3d at 596 (quoting *In re Genetically Modified Rice Litig.*, 576 F. Supp. 2d at 1072-73 (internal quotation omitted)).

**Attorney's Fees and Costs**

Defendant seeks an award of sanctions pursuant to 15 U.S.C. § 1692k(a)(3) which provides in relevant part: "[o]n a finding by the court that an action under [the FDCPA] was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney[s'] fees reasonable in relation to the work expended and costs."
Defendant asserts that it is readily apparent on the face of the complaint that Plaintiff has no cause of action against it, and that Plaintiff's complaint is brought solely for purposes of harassment.

Section 1692k(a)(3) "should be construed narrowly as not to discourage private litigation under the FDCPA." *Kondratick v. Beneficial Consumer Disc. Co.*, 2006 WL 305399, at *10 n.4 (E.D. Pa. Feb. 8, 2006) (citing *Ayres v. Nat'l Credit Mgmt. Corp.*, Civ. A. No. 90-5535, 1991 WL 274695, at *1 (E.D. Pa. Dec. 17, 1991)). "For an award to be made, 'there must be evidence that the plaintiff knew that his claim was meritless and that plaintiff pursued his claims with a purpose of harassing the defendant.'" *Allers-Petrus v. Columbia Recovery Grp., LLC.*, No. C08-5533FDB, 2009 WL 1160061, at *1 (W.D. Wash. Apr. 29, 2009) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1013 (N.D. Cal. 2006)). The provision "appears designed to thwart efforts of a consumer to abuse the statute and avoid responsibility to pay a legitimate debt." *Parker v. Pressler & Pressler, LLP*, 650 F. Supp. 2d 326, 347 (D.N.J. 2009).

On the record before it, the Court concludes that an award of attorney's fees and costs is not justified. Although Plaintiff did not prevail on her attempt to invoke personal jurisdiction, some ambiguity arose from the references to "Portfolio Recovery Associates" in the telephone calls and on the website. More importantly, there is no indication that Plaintiff's claim is frivolous, designed to harass, or to avoid the repayment of debt. For these reasons, the request for attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss for lack of personal jurisdiction is **GRANTED**. (Doc. No. 6.)

A separate order of dismissal will accompany this Memorandum and Order.

                                        _/s/ Audrey G. Fleissig_
                                        AUDREY G. FLEISSIG
                                        UNITED STATES DISTRICT JUDGE

Dated this 25th day of July, 2012.